UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GABRIELLE PHILLIPS,<br>*Plaintiff*,<br><br>v.<br><br>TRANSOM SYMPHONY OPCO, LLC<br>D/B/A BEAUTY QUEST GROUP<br>*Defendants*. | No. 3:22-cv-890 (VAB) |

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Gabrielle Phillips ("Ms. Phillips" or "Plaintiff") has sued her former employer, Transom Symphony Opco, LLC d/b/a Beauty Quest Group ("Defendants" or "Beauty Quest"), for disability discrimination under Connecticut state law. She alleges that she was terminated because of her condition of endometriosis in violation of the Connecticut Fair Employment Practices Act.

For the following reasons, Defendants' motion for summary judgment is **DENIED**.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

   A. **Factual Background**

In April 2021, Scott Missad, Beauty Quest's Chief Executive Officer ("CEO") at that time, interviewed and hired Ms. Phillips for the position of Director of Strategic Initiatives, which was an at-will position. Def. Statement of Material Facts, ECF No. 19-3 ("Def. SMF") ¶¶ 3, 8, 9; Resp. to Def. Statement of Material Facts, ECF No. 25-2 ("Pl. SMF") ¶¶ 3, 8, 9. Ms. Phillips's job description listed "adapting strategic initiatives into prioritized tactics, managing/driving accountability of the tactics with departments, conducting strategic analysis,

1

and synthesizing results into executive level reporting/communication" and "additional responsibilities includ[ing] administrative roles like managing calendars, operating presentations, and creating meeting recaps, as well as completing 'research needed to drive strategic thinking.'" Def. SMF ¶ 11; Pl. SMF ¶ 11. As Director of Strategic Initiatives, Ms. Phillips viewed her biggest accomplishment to be "the event, the hair show, creating a regular meeting cadence and work plan that held everybody accountable and ensured everybody was aware of what the other departments were doing as it pertained to their tasks." Def. SMF ¶ 14; Pl. SMF ¶ 14.

Ms. Phillips alleges for several days leading up to August 17, 2021, she "suffered symptoms of nausea, bloating, vomiting, migraines, and severe abdominal pain." Pl. Objection to Def. Mot. for Summ. J., ECF No. 25 ("Obj.") at 3. On August 17, 2021, she allegedly went to the emergency room, underwent an ultrasound, a 12 cm ovarian cyst was found, and she was diagnosed with endometrioma, which is "a form of endometriosis where the endometrial tissue that lines the uterus grows within the ovaries and causes ovarian cysts." *Id.* That day, she "informed Amanda McCracken, Mr. Missad's Executive Assistant, that she needed surgery to remove a cyst." Def. SMF ¶ 29; Pl. SMF ¶ 29.

"On August 20, 2021, Plaintiff emailed Mr. Missad (copying Jamie Tate-Kenneally, Director of Human Resources) to inform him that she would be having surgery on August 23, 2021, which would hopefully be conducted laparoscopically." Def. SMF ¶ 32; Pl. SMF ¶ 32. Her e-mail did not refer to a diagnosis. Def. SMF ¶ 33; Pl. SMF ¶ 33. Defendants allege that "Mr. Missad and Ms. Tate-Kenneally did not know the nature of Plaintiff's health condition at that time." Def. SMF ¶ 33. Ms. Phillips alleges that Mr. Missad's Executive Assistant, Ms. McCracken knew "and the nature of the relationship between McCracken and Missad" meant that Mr. Missad could have known. Pl. SMF ¶ 33.

On August 23, 2021, Ms. Phillips underwent a cystectomy. Def. SMF ¶ 34; Pl. SMF ¶ 34. No one ever said anything negative to Ms. Phillips about her surgery, and she returned to work on August 25, 2021. Def. SMF ¶¶ 38, 39; Pl. SMF ¶¶ 38, 39. Ms. Phillips alleges that Mr. Missad communicated and met with her less after her surgery, which Defendants dispute. Def. SMF ¶¶ 41–46; Pl. SMF ¶¶ 41–46.

"In or around November 2021, plaintiff claims that she began experiencing symptoms she now knows to be associated with Endometrioma and at the December 1, 2021 appointment, two new ovarian cysts were discovered." Def. SMF ¶ 76; Pl. SMF ¶ 76. In either late November or early December, Plaintiff testified that she was diagnosed with recurring endometriosis. Def. SMF ¶ 77; Pl. SMF ¶ 77.

In the summer and fall of 2021, Beauty Quest was under financial stress and eliminated four sales operations positions. Def. SMF ¶¶ 51, 52; Pl. SMF ¶¶ 51, 52. "Mr. Missad did everything he could to try to improve the position of the company, including freezing spending in some areas, shifting to focus on more profitable priorities, slowing payables to vendors, and cutting costs wherever he could without a burden on the business . . . The Executive Leadership Team also discussed eliminating noncritical roles in order to reduce costs." Def. SMF ¶¶ 55, 56; Pl. SMF ¶¶ 55, 56. Defendants claim that Mr. Missad decided to eliminate Ms. Phillips's position to save costs and because her role was duplicative. Def. SMF ¶ 57. Ms. Phillips disputes this contention because no other management positions were eliminated. Pl. SMF ¶ 57. The parties dispute whether Mr. Missad was aware that Ms. Phillips had endometriosis when he decided to eliminate her position. Def. SMF ¶ 61; Pl. SMF ¶ 61.

As of December 9, 2021, Ms. Phillips was "highly concerned" about losing her position. Def. SMF ¶ 63; Pl. SMF ¶ 63.

On December 15, 2021, Ms. Phillips sent an e-mail to the Director of Human Resources, Ms. Tate-Kenneally, describing her condition as "chronic." Def. SMF ¶ 65; Pl. SMF ¶ 65.

On December 16, 2021, Ms. Phillips was terminated during an in-person meeting with Mr. Missad and Ms. Tate-Kenneally; they informed her that her position was being eliminated because of financial issues. Def. SMF ¶ 67; Pl. SMF ¶ 67. Mr. Missad also "offered to leverage his industry contacts to help" Ms. Phillips find another job. Def. SMF ¶ 68; Pl. SMF ¶ 68.

"No one has been hired as a Director of Strategic Initiatives since the position was eliminated in 2021." Def. SMF ¶ 69; Pl. SMF ¶ 69.

In June 2022, Ms. Phillips brought a single state law claim under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-51 et seq, of disability discrimination against Defendants. Ex. 1 to Pet. for Removal, ECF No. 1-1.

**Procedural History**

On June 3, 2022, Ms. Phillips filed her Complaint in Connecticut Superior Court. *See* Ex. 1 to Pet. for Removal, ECF No. 1-1.

On July 13, 2022, Defendants removed it to federal court. Pet. for Removal, ECF No. 1.

On August 19, 2022, Defendants filed an Answer to the Complaint. Answer, ECF No. 14.

On August 4, 2023, Defendants moved for summary judgment. Mot. for Summ. J., ECF No. 19 ("Mot."); Def. Mem. in Supp. of Summ. J., ECF No. 19-1 ("Def. Mem").

On September 24, 2023, Ms. Phillips filed her objection to the motion for summary judgment. Objection, ECF No. 25 ("Obj."); Pl. Mem. in Supp. of her Obj. to Def. Mot. for Summ. J., ECF No. 15-1 ("Pl. Mem.").

On October 10, 2023, Defendants filed their reply. Reply, ECF No. 27 ("Reply").

## II. STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated

5

speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in [his] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

**III.   DISCUSSION**

The Connecticut Fair Employment Practices Act ("CFEPA") states:

> It shall be a discriminatory practice in violation of this section:
>
> For an employer . . . to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against any individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, gender identity or expression, marital

> status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability, physical disability, including, but not limited to, blindness, status as a veteran or status as a victim of domestic violence[.]

Conn. Gen. Stat. Ann. § 46a-60(b)(1).

"Discriminatory claims brought under CFEPA, Conn. Gen. Stat. § 46a–60 et seq. are construed similarly to ADA claims, with Connecticut courts reviewing federal precedent concerning employment discrimination and retaliation for guidance in enforcing the CFEPA." *Hopkins v. New England Health Care Emps. Welfare Fund*, 985 F. Supp. 2d 240, 255 (D. Conn. 2013); *see also Levy v. Comm'n on Human Rights & Opportunities*, 671 A.2d 349, 355 (Conn. 1996) ("Although this case is based solely on Connecticut law, we review federal precedent concerning employment discrimination for guidance in enforcing our own anti-discrimination statutes."); *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (reviewing federal precedent, including the burden-shifting framework, as a basis for analyzing CFEPA cases); *Mendillo v. Prudential Ins. Co. of Am.*, 156 F. Supp. 3d 317, 344 (D. Conn. 2016) ("The CFEPA is generally 'coextensive' with federal anti-discrimination statutes"); *Gran v. TD Bank*, NA, 204 F. Supp. 3d 446, 452 (D. Conn. 2016) ("Generally, the analysis of discrimination claims under CFEPA is the same as under Title VII.").

"The only relevant difference between the analysis a court undertakes in regards to ADA and CFEPA claims is in defining physical disability. 'CFEPA's definition of physical disability is broader than the ADA's.'" *Hopkins* 985 F. Supp. 2d at 256 (quoting *Beason v. United Technologies*, 337 F.3d 271, 277–278 (2d Cir.2003))

Here, in support of summary judgment, Defendants argue that (1) Ms. Phillips's condition does not meet the definition of a "disability" under CFEPA, and so she fails to establish the first factor necessary for a *prima facie* case; (2) Ms. Phillips's position was

eliminated for financial reasons unrelated to her alleged disability and thus Defendants have a legitimate non-discriminatory reasonable for Ms. Phillips's termination; and (3) Ms. Phillips cannot establish pretext or comparator evidence sufficient to defeat summary judgment.

The Court will address each of these issues in turn.

### A. The Alleged *Prima Facie Case*: "Disabled" under CFEPA

Disparate treatment claims, such as the CFEPA claim brought here, are analyzed under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff must first establish a prima facie case of intentional discrimination by showing that "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position he held; (3) [s]he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination." *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) (internal quotation marks omitted). The first element is in dispute here: whether Ms. Phillips has a disability under CFEPA and therefore is "a member of a protected class."

Connecticut General Statutes § 46a–51(15) defines "physically disabled" as "any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device."

Defendants argue that Ms. Phillips cannot establish a *prima facie* case of discrimination because she was not "disabled" within the meaning of CFEPA. Def. Mem. at 15. They argue that Ms. Phillips has not offered sufficient medical evidence to establish that her condition is chronic. *Id*. at 16–17.

Ms. Phillips argues that her condition is chronic because (1) endometriosis has no cure; (2) she was hospitalized and underwent surgery in August, 2021 and then had recurrence of symptoms again in November, 2021; (3) she had another cystectomy in November 2022; and (4) her doctors have used "chronic" to describe her pain and "recurrent" to describe her endometrioma. Pl. Mem at 12–13.

The Court agrees.

As a preliminary matter, physical disability under the CFEPA is construed more broadly than the federal ADA statute. *See Beason* 337 F.3d at 277–78 ("Given that the definition of disability used by the ADA essentially pre-dates the definition of physical disability promulgated by the Connecticut General Assembly for the CFEPA, the General Assembly, had it wished to do so, could have adopted the ADA definition. The fact that the General Assembly chose not to adopt that language readily supports an inference that the Connecticut legislature appreciated the scope of the ADA definition and intended the CFEPA definition to be different. Moreover, the case law on point, although not extensive, uniformly confirms our belief that the CFEPA's definition of physical disability is broader than the ADA's."); *Desrosiers v. Diageo N. Am., Inc.*, 105 A.3d 103, 110 (2014) (discussing how the legislature chose not to define physical disability because they "wanted to cover as many people as possible under the definition and leave it open and broad"); *Gomez v. Laidlaw Transit, Inc.*, 455 F. Supp. 2d 81, 88 (D. Conn. 2006) ("[CFEPA's] definition is significantly broader than that of the ADA because it does not require that the chronic impairment substantially limit a major life activity.").

CFEPA does not define the terms "chronic," "handicap," "infirmity" or "impairment" and "when left undefined by the legislature, the words of a statute are to be given their commonly approved meaning unless a contrary intent is clearly expressed." Conn. Gen. Stat. §

9

1–1(a); *Carothers v. Capozziello*, 574 A.2d 1268, 1291 (Conn. 1990) (alteration and internal quotation marks omitted). A court has used Webster's Third New International Dictionary Unabridged (1966) to define "handicap," as "a disadvantage that makes achievement unusually difficult; especially: a physical disability that limits the capacity to work;" "infirm" as "not strong or sound physically;" and "impair" as "to make worse; diminish in quantity, value, excellence or strength." *Medvey v. Oxford Health Plans, Inc.*, No. 3:01-CV-1977 (EBB), 2005 WL 2300379, *18 (D. Conn. Sept. 20, 2005); *see also Seely v. Winchester Electronics Corp.*, No. CV-11-6008102-S, 2013 WL 4504830, *5 (Conn. Super. Ct. August 2, 2013); *Fasulo v. HHC Physicianscare, Inc.*, No. HHD-CV-14-6054624-S, 2016 WL 3266434, at *4 (Conn. Super. Ct. May 24, 2016).

To define "chronic," courts have used Black's Law Dictionary, (Sixth Ed.1990) pp. 241–42, which defines "chronic" as "of long duration, or characterized by slowly progressive symptoms; deepseated and obstinate, or threatening a long continuance; distinguished from acute." *See Fasulo*, 2016 WL 3266434, at *4; *Gilman Bros. Co. v. Conn. Comm'n on Human Rights & Opportunities*, No. CV-950536075-S, 1997 WL 275578, *4 (Conn. Super. Ct. May 13, 1997); *Hutchinson v. Ecolab, Inc.*, No. 3:09-CV-1848 (JBA), 2011 WL 4542957, n.11 (D. Conn. Sept. 28, 2011). Connecticut courts have also held "chronic" to similarly mean "marked by long duration or frequent recurrence or always present or encountered." *Fasulo*, 2016 WL 3266434, at *4 (collecting cases).

> There is a split of authority on whether the plaintiff's condition must be unresponsive to medical treatment and ameliorative measures for the condition to be "chronic." On the one hand, courts acknowledge that the condition must substantially limit a major life activity to be a disability under the ADA, and some courts require the condition to be unresponsive to medical treatment and ameliorative measures

> to be "chronic" under the Connecticut Fair Employment Practices Act.
>
> On the other hand, some courts recognize that "disability" is defined more broadly under the Connecticut Fair Employment Practices Act than the ADA, and one court rejects the requirement that the condition must be unresponsive to medical treatment and ameliorative measures to be "chronic" under the Connecticut Fair Employment Practices Act.

*Tryon v. EBM-Papst, Inc*., No. HHB-CV-17-6037028-S, 2017 WL 6273698, at *5–6 (Conn. Super. Ct. Nov. 9, 2017*); Peck v. City of Waterbury Bd. of Educ*., No. UWY-CV-19-6044774-S, 2020 WL 3485716, at *1–2 (Conn. Super. Ct. June 3, 2020) (internal citations and quotations omitted); *see also Dawson v. Sec. Servs. of Connecticut Inc*., No. 3:20-CV-01310 (SVN), 2022 WL 17477601, at *13 (D. Conn. Dec. 6, 2022). To be chronic, the condition does not need to be permanent. *See Caruso v. Siemens Bus. Systs., Inc*., 56 F. App'x 536, 537 (2d Cir. 2003) ("[J]udges in the District of Connecticut and Connecticut state courts previously have rejected the view that the ADA [permanence] standard is incorporated into CFEPA[.]").

Connecticut courts have also ruled that adverse treatment on the basis of perceived disability is similarly prohibited. *See Peck*, 2020 WL 3485716, at *1–3 ("[O]ur Supreme Court has held that liability may attach if the plaintiffs are perceived as having chronic physical disabilities even if they are not physically disabled as defined by the statute[.]") (quoting *Tryon*, 2017 WL 6273698, at *5–6 and *citing Desrosiers*, 105 A.3d at 114). Based on Ms. Phillips's communication to the Defendants, there is a genuine issue of fact for a jury to decide as to whether her condition was chronic. *See* Phillips Dep., Ex. 17, December 15, 2021 e-mail) ("Two weeks ago I was diagnosed with a severe form of enbdometrioiss. . . . This diagnosis is directly related to my emergency surgery in August. I'm writing to let you know that once every three months I will need to go to the doctor for a full blood panel and ultrasound to monitor for additional cyst growth that would require surgery . . ."); *see, e.g.*, *Gomez*, 455 F. Supp. 2d at 88

11

("A reasonable jury could find from this evidence that plaintiff's [medical condition] is 'chronic'").

Accordingly, the Court will assume that Ms. Phillips can make out a prima facie case under the CFEPA.

**B.      Defendant's Alleged Nondiscriminatory reason and Plaintiff's Alleged Pretext**

Once the plaintiff makes out her prima facie case, "the burden shifts to the employer to come forward with a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* "The employer's burden, however, is 'not a demanding one[.]' The employer 'need not prove the absence of discriminatory motive or that the [adverse employment decision] was motivated by a legitimate reason.' Instead, the employer need only articulate 'legitimate nondiscriminatory reasons [that are] clear and specific.'" *Martinez v. City of Stamford*, No. 3:20-CV-00174 (JCH), 2022 WL 824638, at *4 (D. Conn. Mar. 17, 2022), *aff'd*, No. 22-702-CV, 2023 WL 3162131 (2d Cir. May 1, 2023) (citations omitted).

The burden then shifts back to the plaintiff to demonstrate that "the employer's explanation is a pretext" for discrimination and that membership in the protected class was the real reason for the adverse action. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014). The CFEPA follows Title VII in requiring the motivating factor test to establish pretext. *See Wallace v. Caring Sols., LLC*, 278 A.3d 586, 602 (2022) ("[T]he motivating factor test, and not the but-for test, remains the applicable causation standard for claims of discrimination under CFEPA").

Even if Ms. Phillips has made out a prima facie case, Defendants argue they have stated a legitimate, nondiscriminatory reason for terminating Ms. Phillips: they eliminated her position in response to financial stress. Def. Mem. at 8–9.

In response, Ms. Phillips argues that this reason was at least, in part, pretextual.

Defendants argue though that Ms. Phillips has not presented any comparator evidence and cannot raise a factual dispute over whether Defendants' nondiscriminatory reason is pretextual. Def. Mem. at 27–29. Defendants also argue that the timeline establishes that Mr. Missad did not know about Ms. Phillips's condition when he made the decision to terminate her. Def. Reply at 1–3.

In response, Ms. Phillips argues that Defendants' finances were not actually so dire, Pl. Mem. at 18, and that the temporal proximity between when she sent her email informing Human Resources of her "chronic" condition and when she was terminated is sufficient to raise a question that a jury should decide. *Id.* at 19.

The Court agrees.

Under the CFEPA, the motivating factor test, rather than but-for cause standard, is the relevant one. *See Wallace*, 278 A.3d at 602 ("Accordingly, we are persuaded that the motivating factor test, and not the but-for test, remains the applicable causation standard for claims of discrimination under CFEPA, regardless of the federal precedent established in Gross and its progeny."). To defeat summary judgment, Ms. Phillips needs to raise a factual question as to whether her medical condition was a "motivating factor" behind her termination. *See, e.g.*, *Simone v. Lucerne Capital Mgmt. LP*, No. FST-CV18-6037061-S, 2024 WL 164911, at *2 (Conn. Super. Ct. Jan. 10, 2024) ("A 'motivating factor' is a factor that made a difference in the defendant's decision-making. The plaintiff does not need to prove that her [protected] status was the only or sole reason for the adverse action").

In the absence of a genuine issue of material fact as to whether the Defendants have put forward a legitimate nondiscriminatory reason for terminating Ms. Phillips—finances—the

remaining issue is whether this stated reason is pretextual. *See Gilani v. Teneo, Inc.*, No. 20-CV-1785 (CS), 2021 WL 3501330, at *14 (S.D.N.Y. Aug. 4, 2021), *aff'd*, No. 22-169, 2022 WL 17817895 (2d Cir. Dec. 20, 2022) ("Because Defendants have met their burden to offer a legitimate, non-discriminatory reason for terminating Plaintiff, the burden shifts to Plaintiff to produce evidence that Defendants' reason is pretextual.") (citing *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)). To prove pretext, "the plaintiff must demonstrate that the proffered reason was not the true reason (or in any event not the sole reason) for the employment decision, which merges with the plaintiff's ultimate burden of showing that the defendant intentionally discriminated against her." *Littlejohn v. City of New York*, 795 F.3d 297, 307–08 (2d Cir. 2016).

"Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage. However, a plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013) (citation omitted).

Here, at a minimum on the issue of pretext, there is temporal proximity. Ms. Phillips sent her e-mail informing Human Resources of her "chronic" condition on December 15, and Mr. Missad terminated her employment on December 16. Def. SMF ¶¶ 65, 67; Pl. SMF ¶¶ 65, 67. And even before her termination, there is record evidence that, weeks before Ms. Phillips's termination on December 16th, Mr. Missad allegedly stopped interacting in the same way with Ms. Phillips after her hospitalization and surgery for her condition. Phillips Dep. 43:11–48:25. Additionally, Ms. Phillips has presented evidence that the Chief Financial Officer, David Faiman, had problems with working conditions allegedly necessary for Ms. Phillips to do her

job, *id.* 139:20–142:8, and that Mr. Faiman and Mr. Missad, before her termination, allegedly discussed her "chronic health condition" with one another. *Id.* 155:5–156:17.

But knowledge about Ms. Phillips' medical condition generally or specifically does not create a genuine issue of fact as to the "chronic" nature of Ms. Phillips' medical condition. *Cf. Longway v. Myers Industries, Inc.*, 12 Fed. Appx. 57, 59 (2d Cir. 2020) ("And to the extent that Longway communicated to his employer that he received medical treatment, the record does not show that he ever characterized his condition as anything other than a one-time injury of the sort that would not qualify as a disability under [the ADA or CFEPA]."). And by Ms. Phillips's own admission, she did not inform the Defendants of the allegedly "chronic" nature of her condition until the day before her termination. Ex. 17, ECF No. 19-2, (December 15, 2021 e-mail) ("I plan to discuss this tomorrow with my check-in with Scott, but wanted to make sure I remembered to inform you as well."). Ms. Phillips thus must create a genuine issue of material fact that the revelation of her very recent chronic diagnosis (the day before her termination) resulted in her termination, beyond the temporal proximity of her termination. *See Neal v. Specialty Cable Corp.*, No. 3:21CV00497(SALM), 2022 WL 4584082, at *9 (D. Conn. Sept. 29, 2022) ("A plaintiff may establish pretext by, inter alia, 'demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action.'" (citing *Zann Kwan*, 737 F.3d at 846.")); *Smith v. Da Ros*, 777 F. Supp. 2d 340, 357 (D. Conn. 2011) ("Second Circuit precedent makes clear that the relevance of temporal proximity to the question of whether there is a 'causal nexus' between a plaintiff's protected activity and the defendant's allegedly retaliatory action will depend on the facts and circumstances of each particular case. Thus, mere temporal proximity—even very close temporal proximity—is not always sufficient to support an inference that the plaintiff's protected activity

was a motivating factor in the defendant's adverse employment action.") (citations omitted).

Here, while Defendants argue that Ms. Phillips's termination resulted from the company's financial conditions alone, Def. Mem. at 8–10, and preceded any understanding of the alleged "chronic" nature of her medical condition by those who decided to terminate her, *id.* at 18–19, the evidence in the record in support of these arguments includes only witness testimony, not any contemporaneous written correspondence between and among any of these witnesses, such as e-mails, to corroborate their testimony. As a result, the determinations inherent in assessing the credibility of their testimony is for a jury to decide, not this Court. *See, e.g. James v. MetLife Grp., Inc.*, No. 3:20-CV-01113 (JAM), 2021 WL 2917659, at *6 (D. Conn. July 12, 2021) (deciding whether the "employer actually knew of the plaintiff's protected activity" could not be done "without ultimately engaging in a credibility determination"); *see also Chen v. Triumph Engine Control Sys., Inc.*, No. 3:20-CV-01840 (VLB), 2023 WL 2712532, at *8 (D. Conn. Mar. 30, 2023) ("determinations of the weight to accord evidence or assessments of the credibility of witnesses are improper on a motion for summary judgment, as such are within the sole province of the jury") (citing *Hayes v. New York City Dep't of Corr.*, 84 F. 3d 614, 619 (2d Cir. 1996)).

Accordingly, a jury must decide if Defendants' stated reason for terminating Ms. Phillips was pretextual and whether her condition was a motivating factor in the termination decision.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **DENIED.**

SO ORDERED at New Haven, Connecticut, this 8th day of March, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE